Robert BOYD, Petitioner,

v.

David H. ALEXANDER, Judge pro tem., Lyon County, et al., Respondents.

Court of Appeals of Kentucky.

Nov. 11, 1955.

J. Gordon Lisanby, Princeton, for petitioner.

MOREMEN, Judge.

This original action filed pursuant to R.C.A. 1.420 seeks an order requiring the regular county judge and the county judge pro tem. of the Lyon County Court to call a local option election in Lyon County.

A motion for a temporary mandatory injunction was, by order of this court, on October 5, 1955, passed to the merits and time was granted in which briefs might be filed. No response has been filed and we have not been favored with briefs from either the petitioner or the respondents.

The petition, in substance, alleges and the events which brought about this action are as follows: On July 19, 1955, a petition, purportedly signed by 582 voters of Lyon County, was filed in the Lyon County Court, pursuant to KRS 242.020, requiring the county judge to call and set a date for a local option election in that county. On July 25, 1955, the respondent (regular) judge deferred action on the petition until August 8, 1955. On the latter date, objections to the petition calling for an election were filed, based on the ground that the petition had not been signed by 25% of the duly qualified voters of Lyon County. In addition, the objections attacked specifically 102 signatures on the petition for various reasons. No direct attack was made on the remaining 480 odd signatures.

At a hearing on August 11, 1955, the petitioner introduced 35 witnesses who testified to the verity of 62 of the 102 signatures specifically attacked, in addition to verifying their own signatures. The Lyon County Court clerk was introduced and he testified that there were 1,995 votes cast at the general election last preceding the date of the filing of the petition. Therefore, the number of signatures necessary to meet the requirements of the statute would be 499. No evidence was introduced by the respondents.

At the conclusion of the hearing, the respondent judge pro tem., on August 18, 1955, entered judgment allowing 30 of the signatures attacked to be counted, disallowing the remainder of the 102 signatures specifically attacked to be counted, and sus-

taining the objection to the petition on the following ground:

"An examination of the entire petition by the court plus the personal knowledge of many of the purported signers and the court not being satisfied that the purported signatures are the bona fide signatures of the persons listed therein together with the objections to the petition that it was not signed by qualified voters of Lyon County equal to 25% of the votes cast in the county in the last general election, the *petitioners* have failed to establish by satisfactory evidence that the petition was signed or authorized to be signed by more than Thirty petitioners whose names have been ordered counted upon this hearing and that no evidence was presented to overcome the objections to the petition as a whole."

It will be readily observed that the respondent imposed upon the petitioners the burden of proving each signature by direct evidence and he also established himself as an expert to pass on the validity of signatures to the petition. In both conclusions, the respondent erred.

■ We said in Widick v. Pursifull, 299 Ky. 773, 187 S.W.2d 447, that in the absence of a showing that the county judge was sufficiently acquainted with signatures to qualify as an expert, his conclusion that certain signatures should be stricken was not entitled to any weight. There the county judge ordered certain signatures stricken after comparing the signatures on the petition with those on the registration books of the county. Here, no comparision was made and there is nothing to indicate, other than his general statement that he was acquainted with many of the purported signers, that the respondent judge (pro tem.) possessed the attributes of an expert on signatures. It follows, therefore, that the respondent judge's action, without any qualification, in summarily refusing to consider signatures, not specifically attacked, was erroneous.

■ We pass then to the question of the burden of proof. The respondent, as previously mentioned, placed on the petitioners the burden of proving each of the signatures. In Ledford v. Hubbard, 219 Ky. 9, 292 S.W. 345, we had before us the question of upon whom the burden of proof rests to prove or disprove signatures. After mentioning the rule that an "unquestioned autograph is self-probative," we established the rule that there is a presumption that each signature upon a petition was written by the voter himself. An exception to this rule, as set out in the Ledford case, exists where evidence is introduced that a signature was not written by the alleged signer himself. Then the burden shifts to the proponent of the document bearing the signature to prove by evidence that the signature was written for the alleged signer in his presence and by his direction.

■ The rule then is that a signature is self-probative until some evidence overcomes that presumption. This being so, the 480 odd signatures are presumably valid signatures and this number coupled with the 30 signatures permitted to be counted by the respondent judge raises the number to 510 signatures which is in excess of the 25% required.

■ The petition being regular, the respondent judge was under the ministerial duty of calling the election and setting a date.

KRS 242.020(4) provides that a local option election shall be called at the current or next regular term of the county court after the petition is filed; KRS 242.030(2) provides that the election shall not be held earlier than 60 nor later than 90 days after the date the petition is filed; KRS 242.030(3) provides that the election shall not be held within 30 days next preceding or following a regular "political" election; and KRS 242.160 requires the date to be so fixed that a period of 2 weeks shall be allowed for advertising.

Here the petition was filed on July 19, 1955. The election, in the ordinary course

88

of events, should have been held between September 17 and October 17—that being the period between the 60th and 90th day after the date the petition was filed. However, as above mentioned, KRS 242.030(3) prohibits the holding of a local option election within 30 days next preceding or following a regular political election and, since such an election was scheduled for November 8, 1955, no local option election may be held between the dates, October 7 through December 9 inclusive. It is apparent that the 30 day period in which an election might be held, on the petition in the case at bar, extends by 11 days into the period prohibited by subsection (3) of KRS 242.030, and during this period the case was pending in this court.

■■ Therefore, when the facts of the instant case are considered in connection with the above mentioned subsections of KRS 242.030, a problem arises concerning the manner in which both subsections may be given meaning and substance without permitting one subsection to override the other. It is our duty to consider the subsections in pari materia and, if possible, to assign them a meaning which may be applicable to all cases of fact which may arise thereunder. This may be done by treating subsection (3) of KRS 242.030 as mandatory and prohibiting any election within 30 days of a general election but not having the effect of destroying the rights of the parties which have accrued under subsection (2) of the same statute. Thus the evil against which the legislature apparently guarded, that is, confusing the rather emotional issues involved in a local option election with those of general elections, may be avoided.

It is our opinion, therefore, that subsection (3) merely tolled the running of the period of one month in which the election ordinarily would have been held.

■■ In the case at bar the election should be held on some date prior to December 20, 1955, and the county judge of Lyon County shall set the election for such time as will permit the 2 weeks advertising period required by KRS 242.160. Further-

more, since subsection (4) of KRS 242.020 requires the election to be called at the current or next regular term after the date of the filing of the petition, the county judge will enter an order retroactively calling the election as of the September term, 1955. This procedure has been approved in Bays v. Bradley Mills, Ky., 254 S.W.2d 348; and Howard v. Carty, Ky., 275 S.W.2d 68.

The writ will issue directing the respondents to call the election in conformity with the expressions of this opinion.