Leroy FREDERICK, Appellant,

v.

Bert T. COMBS, Governor of Commonwealth of Kentucky, Appellee.

George GUGEL, Appellant,

v.

Bert T. COMBS, Governor of Commonwealth of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 23, 1962.

J. D. Buckman, Jr., Frankfort, for appellants.

John B. Breckinridge, Atty. Gen., Robert L. Montague III, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Acting in accordance with KRS 63.100, Hon. Bert Combs, Governor of Kentucky, separately charged George Gugel and Leroy Frederick, Chief of Police and Chief of Detectives, respectively, of the City of Newport, with neglect of duty and appointed a special commissioner to hear the cases and submit his findings and recommendations. While the proceedings were pending before the commissioner both of the respondent officers retired pursuant to the civil service ordinances of Newport.

Gugel's retirement was compulsory by reason of age. Frederick's was voluntary. For the purposes of the argument here it may be conceded that their offices were vacated by those actions.

Following their retirement each of the appellants moved the commissioner to dismiss the proceedings as moot, and they elected to stand or fall on this point, without the introduction of further evidence, by stipulating that no question would be raised as to sufficiency of the proof to sustain the ouster charges. The commissioner overruled the motions and submitted his findings, recommending that the appellants be disqualified from holding any office in this state for a period of four years. KRS 63.990. The Governor thereupon issued executive orders confirming the findings. The concluding paragraphs of the respective orders are as follows:

"During these proceedings, the said Leroy Frederick has resigned from his office as Chief of Detectives of the City of Newport. Since the finding of fact warrants his removal from office, I hereby direct that all the provisions and penalties of the statutes involved shall be applicable to the said Leroy Frederick the same as though he had been removed from office."

* * * * * *

"During these proceedings, the term of office of the said George Gugel, as Chief of Police of the City of Newport, expired. Since the finding of fact warrants his removal from office, I hereby direct that all the provisions and penalties of the statutes involved shall be applicable to the said George Gugel the same as though he had been removed from office."

The questions raised on appeal from these executive orders do not require us to consider the evidence. They involve only the authority of the Governor to conduct the ouster proceedings, particularly after the respondents had retired from office, and to enter orders that literally did not remove the appellants from office but had the effect only of invoking the 4-year disqualifications under KRS 63.-990.

The first contention is that because the appellants held their respective offices subject to the provisions of KRS 95.440 et seq. the method of removal set forth in KRS 95.450 was exclusive. These statutes are the police and firemen's civil service laws for second and third class cities. Under KRS 95.450 the authority to hear and act upon charges against police and firemen, including the power of dismissal, is vested in the city legislative body, and it is provided that a member of the system may be reprimanded, dismissed, suspended or reduced in grade or pay "only after charges are preferred and a hearing conducted as provided in this section." KRS 95.450(1).

The substance of KRS 95.450(1) originated in the following sentence of Ch. 28, § 2, subsec. 4, Acts of 1920: "No officer or member of the police force or fire department except as provided in this act, shall be reprimanded, removed, suspended or dismissed * * * until written charges have been made or preferred against him, and a trial had as herein provided." It was carried forward verbatim by reenactments in 1926 (Ch. 132, § 2, subsec. 3) and 1932 (Ch. 116, § 1) and was modified to its present form with the adoption of the Kentucky Revised Statutes in 1942.

Section 227 of the Constitution originally conditioned the removal of certain named officers upon their conviction of misfeasance, malfeasance or "willful neglect of discharge of official duties." By an amendment adopted in 1919 the following language was added:

"Provided, also, that the General Assembly may, in addition to the indictment or prosecution above provided, by general law provide other manner, method or mode for the vacation of office, or the removal from office of any sheriff, jailer, constable or peace officer for neglect of duty, and

may provide the method, manner or mode of reinstatement of such officers."

This amendment was carried into effect by Ch. 49 of the Acts of 1924, which was repealed and superseded by Ch. 142 of the Acts of 1926, now KRS 63.100 et seq. Section 8 of the latter act says that it "shall be liberally construed, its purpose being to provide a remedial procedure for the enforcement of the 1919 amendment of section 227 of the Constitution of this Commonwealth."

■ The first sentence of KRS 63.100 says, "A peace officer guilty of neglect of duty shall be removed from office in the manner prescribed by KRS 63.100 to 63.-130." The act makes no exceptions for peace officers who are or may be subject to removal under KRS 95.450 or any other law, and the history of the respective statutes under discussion does not indicate that any exceptions ever were intended. Though counsel cites text out of certain opinions to the effect that the power of a city legislative body under KRS 95.450 is "plenary," in none of those cases was this question before the court. Indeed, if there were any room to say that one of the statutes excludes the other, KRS 63.100 might have the better of the argument.

There is sound reason why no peace officer should be excepted from the application of KRS 63.100. The people of the whole state have an interest in the peace and good order of every individual community within it. Out of the common law comes the analogous principle that a single bawdy house is a public nuisance, and not just a neighborhood problem. It is a public nuisance even if the neighborhood in which it exists approves of it. In fact, it is hardly possible for vice and corruption to flourish very long without the indulgence of the local community, and a remedy resting exclusively with the legislative body of that community could not be adequate protection to the rights of the public as a whole. Wisely, therefore, the people of Kentucky have reserved that responsibility by committing it to the wisdom and discretion of their chief magistrate.

■ The second argument is that when the appellants vacated office with the consent and approval of the city council, the body having authority to appoint their successors (cf. KRS 63.010), the proceedings against them became moot. The case has been ably and well presented, and we have duly considered the authorities submitted on both sides. However, the particular question is of first impression in this jurisdiction. In arriving at an answer we must rely at last upon our own sense of what is right, proper and sound. That criterion tells us in no uncertain terms that an officer against whom ouster proceedings are pending can no more be allowed to evade, by relinquishing office, any of the substantial consequences attached by law to an adverse determination of the matter than a defendant in a suit for both compensatory and punitive damages could be permitted to end the action by payment of the compensatory amount alone. In this case KRS 63.990 attaches a 4-year disqualification to the removal, which not only is a substantial consequence, but may be even of more importance than the ouster itself, depending on the attendant circumstances. It is unnecessary, therefore, that we consider what might be the law if a removal from office were the only object of such an action. This case is clear. The proceedings under KRS 63.100 were not and could not be rendered moot by any change in the employment status between the appellants and the City of Newport. Cf. Brooklyn Audit Co. v. Department of Taxation and Finance, 1937, 275 N.Y. 284, 9 N.E.2d 930; Recall Bennett Committee v. Bennett, 1952, 196 Or. 299, 249 P.2d 479; and Ferguson v. Maddox, 1924, 114 Tex. 85, 263 S.W. 888, 893.

■ The last point is that the statutes under which the Governor acted gave him no power except to remove the appellants from office, and that his orders not only

failed to do this but expressly recognized that the respective offices already had been vacated. Such a construction sets words above facts and principles, and it is untenable. As we have said above, the actions had a substantial purpose beyond mere removal of the officers, and the executive orders were couched in terms of those further consequences. This was entirely appropriate. The Governor chose not to question the legal efficacy of the resignations, as he might conceivably have done, but elected instead to concede it, recognizing that so much of the purpose of the proceedings had been accomplished in fact. We think it would be utterly unreasonable to give this realistic approach the ultimate effect of reducing the whole matter to a useless farce.

The orders are affirmed.