W. L. GEARHART et al., Appellants,

v.

KENTUCKY STATE BOARD OF EDUCATION et al., Appellees.

Court of Appeals of Kentucky.

March 2, 1962.

Rehearing Denied April 20, 1962.

Ben B. Fowler, Dailey & Fowler, Frankfort, Ora F. Duval, Olive Hill, for appellants.

John B. Breckinridge, Atty. Gen., Ray Corns, Asst. Atty. Gen., for appellees.

MONTGOMERY, Judge.

The authority of the State Board of Education to oust the members of a county board of education is questioned on this appeal. The orders of removal and of appointment of new members were upheld by the circuit court.

On February 11, 1961, Wendell P. Butler, Superintendent of Public Instruction, preferred charges against the individual members of the Carter County Board of Education. Each member was charged with being guilty of immorality, misconduct in office, incompetency or willful neglect of duty, based on a report of the Auditor of Public Accounts as checked by the Superintendent's staff in cooperation with the Attorney General.

The hearings on the charges continued for more than three months. During the course of the hearings, Henry Hall and Coy Kouns resigned as members of the county board. Later, Chester DeHart resigned. They were replaced by Estill Caudill, Joyce Edwin Gearhart, and Ruby Click, also referred to as Mrs. Curtis Click. Joyce Edwin Gearhart later was replaced by Nell James. All appointments were made by the county board. W. L. Gearhart and J. H. McGlone remained as the only elected board members. Excepting Joyce Edwin Gearhart, the last five named members constitute the appellants.

On August 3, 1961, the Honorable James W. Stites, a former member of this Court, was appointed as special commissioner for the State Board and the Superintendent to investigate, to hear evidence, and to report his findings of fact and recommendations on the charges. The gist of the Stites report is that the members of the Carter County Board of Education had failed by inaction to correct the irregularities charged to such board and its county superintendent, Heman H. McGuire. One course of action recommended in the Stites report was the removal of the entire county board pursuant to KRS 156.210(3).

On September 7, 1961, an order of the State Board was issued to each of the Carter County Board members by which each of them was directed to show cause within ten days why he or she should not be removed from office "in order to rectify and regulate the matters of mismanagement, misconduct, violation of law or wrongful or improper use of district or state school funds and neglect in the performance of duties imposed upon you and each of you by law." A copy of the Stites report was attached. See KRS 156.110. They were directed to respond by September 18, 1961.

W. L. Gearhart, J. H. McGlone, Estill Caudill, and Ruby Click responded on September 16, 1961. By their response, the authority to take the action suggested was questioned by the four named board members.

On September 20, 1961, the State Board ordered that W. L. Gearhart, Joyce Edwin Gearhart, J. H. McGlone, Mrs. Curtis (Ruby) Click, Estill Caudill, and Nell James "be and they are, and each of them individually and as a Board of Education, are removed as a Board and from their respective offices as Members of the Carter County Board of Education * * *." Five new board members were appointed in the same order.

Joyce Edwin Gearhart tendered his resignation on September 18, 1961. From the record it appears to be conceded that Nell James was appointed and took the oath of office to fill such vacancy on September 19, 1961. The rule is that the resignation of a public officer, in the absence of statute, does not become effective until accepted by the proper authority or by equivalent action, such as the appointment of a successor. Commonwealth ex rel. Wooton v. Berninger, 255 Ky. 451, 74 S.W.2d 932, 95 A.L.R. 213; Daniels v. Adams, 314 Ky. 258, 234 S.W.2d 742. Gearhart's resignation became effective when Nell James qualified. KRS 160.180

(1) (f). See Frederick v. Combs, Ky., 354 S.W.2d 506, on subsequent consequences.

This action was filed by the ousted board members, excepting Joyce Edwin Gearhart, against the Kentucky State Board of Education and the five persons named in the order as new board members. The validity of the action taken by the State Board was questioned and injunctive relief was sought.

It is charged that the action of the State Board was designed to remove the entire county board and to seize the appointive power which appellants contend is specifically conferred on the local board. The determination of the controversy depends on the construction of the statutory powers of the Superintendent of Public Instruction, the State Board, and the county board. Four statutes are primarily involved: KRS 156.070, 156.110, 156.210, and 160.190.

These statutes are the backbone of the control exercised by the State Board over the common schools. KRS 156.070 provides that the State Board "shall have the management and control of the common schools." KRS 156.110(1) provides that the State Board "shall remove any school board member * * * from office for immorality, misconduct in office, incompetency or willful neglect of duty." By subsection (2) it is made the duty of the Superintendent to recommend such removal. Any vacancies caused thereby are to be filled in the manner provided by law. See KRS 160.190. This statute originally read, "For the purpose of enforcing the provisions of this act," referring to Chapter 113 governing Common Schools. See Carroll's Kentucky Statutes, Section 4377-13. By KRS 156.210, the Superintendent or his assistants are required to report "any mismanagement, misconduct, violation of law or wrongful or improper use of any district or state school fund, or neglect in the performance of duty on the part of any official." It then becomes the Superintendent's duty under the statute to report such violation to the appropriate officials for prosecution. The statute concludes with this

grant of authority, to-wit: "If prosecution is not warrantable, the State Board of Education may rectify and regulate all such matters."

■ These four statutes contain the grant of authority and means of control provided by the General Assembly for the control of the common schools by the State Board. This common purpose entwines them. These statutes are pari materia. They must be construed together and effect must be given to each part thereof when possible. Brooks v. Meyers, Ky., 279 S.W. 2d 764; Boyd v. Alexander, Ky., 284 S.W. 2d 85; and Economy Optical Company v. Kentucky Board of Optometric Examiners, Ky., 310 S.W.2d 783.

■ When so construed, it is clear that the General Assembly intended that the State Board should have control over the common schools, with the power of removal of such board members who might be found guilty of specified charges. This is a means of maintaining a uniform system of schools. KRS 158.010.

An examination of the steps taken prior to the removal indicates that the inquiry was initiated by recommendation of the Superintendent under KRS 156.110. The show cause order of September 7, 1961, with a copy of the Stites report containing the charges, fully complies with the requirements of KRS 156.110(1). Each ousted member was given the full period of notice required, and response was filed by each. The ouster was ordered after consideration of the evidence and the responses by the State Board. The responses filed and the argument on this appeal do not question the factual foundation on which the charges were preferred. Appellants have been content to question only the statutory authority to oust. It, therefore, is concluded that the Board proceeded properly according to the pertinent statutes in removing W. L. Gearhart, J. H. McGlone, Mrs. Curtis (Ruby) Click, and Estill Caudill from office as members of the Carter County Board of Education.

It is argued that the removal order was an improper and unauthorized exercise of the authority to "rectify" contained in KRS 156.210(3). Removal under this statute was recommended in the Stites report. Prior to the giving of the show cause notice by the Board on September 7, 1961, the Superintendent had given the notice required by KRS 156.210(3) to the proper authorities in order that prosecution might be initiated. Two sessions of the Carter County grand jury took no action. Under the statute, it then became the duty of the State Board to rectify the situation.

■ The method of rectifying the matters at hand was limited to such authority as the State Board had under the statutes. The State Board chose the method of ouster under KRS 156.110 as it was authorized to do. KRS 156.210 is one of the statutory methods for the correction of irregularities committed or permitted by local boards, with final resort to ouster under KRS 156.110 authorized when other means prescribed in KRS 156.210 have proved unsuccessful. The removal order was not an improper or unauthorized exercise of authority under KRS 156.210.

■ Appellants contend that the local boards of education are given direct administrative control over the affairs of the district. KRS 160.290. It is argued that "home rule" should govern. This argument falls flat in the face of the expressions of control and means of enforcing control in certain instances of dereliction specifically mentioned. Further, the grant of administrative control to the local board in KRS 160.290 must be "consistent with the rules and regulations" of the State Board as expressly provided therein. It, therefore, is clear that the Legislature intended that the local board school administration must be subject to the controls vested in the State Board and the Superintendent of Public Instruction as set forth in the statutes previously mentioned.

■ It also is argued that the Legislature has not authorized the blanket removal of local boards of education. Such board is a body politic and corporate with perpetual succession. KRS 160.160. The board is an entity and only its members can be ousted.

The statutes authorizing removal contain no limitation as to the number of members that may be removed at any one time. The proceeding to oust by its very nature is one against an individual, but nowhere is there anything in the statutes to indicate that ouster proceedings may not be had simultaneously against more than one member or against all. Each removal must stand or fall on the irregularities or misconduct attributable to the particular member. If more than one or all of the members are charged with contributing jointly to the irregularities or misconduct, then such members as are charged, including all, may be properly proceeded against for removal. The show cause notice and the ouster order show that the action taken was directed against certain named individuals as members of the Carter County Board of Education. Consequently, any member who was found guilty was removable, even if it meant the removal of the entire board membership. Such a contingency is provided for by the statute authorizing the filling of vacancies. KRS 160.190.

■ Having concluded that the ouster of four board members is valid and that the ouster of a fifth is ineffective by reason of his prior resignation, attention is now directed to the ouster of the member named in his stead. Nell James was included in the ouster order. She became a member of the board by appointment on September 19, 1961, one day after the date on which the other four board members were ordered to respond to the show cause order. Since she was not a board member prior to September 19, 1961, no conduct of hers as such was questioned by the Superintendent, the State Board, or Judge Stites. No charges

or proceedings were placed against her by anyone under any statute. In such case, there was no valid basis for the order removing her as board member one day after she took office. In this respect, the judgment is in error.

By this appeal, the right of the State Board to appoint five new board members is questioned. Had the ouster order been sustained in its entirety, no problem would have been presented. It is clear that if the local board has no members, the State Board may make the appointments. KRS 160.190.

■ The problem arises because of Nell James' membership on the board. What authority does the State Board have to fill the vacancies on the local board which has one member? In Barton v. Brafford, 264 Ky. 480, 95 S.W.2d 6, it was held that a quorum of members of a board of education was not required and that one member could fill the vacancies on the board provided it was done within ninety days after such vacancies occurred. In so holding the Court obviously gave no effect to the language of the statute conferring this authority on "other members of the board." The plural use of the word "member" was not discussed.

As authority for such construction of the statute, the Court cited Douglas v. Pittman, 239 Ky. 548, 39 S.W.2d 979, holding that the remaining members constituting less than a majority could fill the vacancies. The Court distinguished Glass v. City of Hopkinsville, 225 Ky. 428, 9 S.W.2d 117, on the ground that the statute there involved delegated the authority to the board rather than to the "other members." In the Glass case, the Court said:

"* * * When a power is delegated to a board or body consisting of several members, it presupposes the presence of a quorum, as a condition to valid action, and the power may not be exerted effectively by a less number. 43 C.J. page 503; Hopkins v. Dickens,

188 Ky. 368, 222 S.W. 101; Short v. Langston, 125 Ky. 816, 102 S.W. 236; Scott v. Pendley, 114 Ky. 606, 71 S.W. 647; Pierce v. Sullivan, 189 Ky. 193, 224 S.W. 872."

In the Douglas case, the Court bottomed its decision on Booth v. Board of Education of City of Owensboro, 191 Ky. 147, 229 S.W. 84, which dealt with the right of the board members to hold over and act until their successors in office were elected and qualified. The reasoning of the Court in the Douglas case was that the Legislature intended that there should be "at all times a working board, unhampered by vacancies and with continual ever-present ability reposing in them to fill vacancies and perform duties imposed upon them as such officials." However, the statute in the Booth case (Carroll's Kentucky Statutes, Section 4399a–1c) contained no other provision for filling vacancies as does KRS 160.190, so the reasoning in the Douglas case is not sound when applied to the present situation and statute. It should be pointed out that the Booth and Douglas cases were decided prior to the change in the statute in 1934. See Carroll's Kentucky Statutes, Section 4399–30, now KRS 160.190.

By the 1934 change an additional method for filling vacancies was provided by giving authority to the State Board; thus, there was no longer the need to provide the local board with a self-perpetuating power of appointment to fill vacancies. The language, "other members," of KRS 160.190 indicates clearly a contrary view to vesting the power to fill vacancies in one member. KRS 160.270(1) provides that a majority of the board shall constitute a quorum for the transaction of business. This sound rule was expressed in the Glass case which the Court undertook to distinguish in the Douglas case.

The additional method of filling vacancies, the language of KRS 160.190, and the clear requirement of a majority under KRS 160.270(1) serve to indicate that the Legislature intended that there should be a

quorum of the local board members in order to transact business, of which the filling of vacancies would appear to be the most important. To hold otherwise would obtain the absurd result that one board member would be authorized to appoint four other board members in order to have a quorum to transact the business of purchasing a typewriter, as an example. It is not to be presumed that the Legislature intended any such result. Swift v. Southeastern Greyhound Lines, 294 Ky. 137, 171 S.W.2d 49; Hamilton v. International Union of Operating Engineers, Ky., 262 S.W.2d 695. Consequently, it is concluded that the Legislature intended by the phrase "other members" to mean a majority of the board membership is necessary in order to transact business, including the filling of vacancies. Where, as here, there are so many vacancies that a majority cannot be obtained, then the State Board under authority of KRS 160.190 should fill the vacancies. Accordingly, four of the five appointments made by the State Board to the Carter County Board of Education are valid. The appointment to fill the supposed vacancy in the division served by Nell James is void because there was no vacancy in that office. See KRS 160.210. So much of Barton v. Brafford as may be inconsistent is overruled.

The judgment is affirmed as to the ousting of W. L. Gearhart, J. H. McGlone, Estill Caudill, and Mrs. Curtis (Ruby) Click and as to the four appointments indicated, and is reversed as to Nell James.

BIRD and PALMORE, JJ., dissent in part.

BIRD, Judge (dissenting).

My learned colleagues have joined in the majority opinion because they believe they are making a proper disposition of this case and I do not intend that this dissent portray any personal criticism of either the writer of the opinion or those who join with him. However, I am so thoroughly in disagreement with that part of the decision which sanctions appointment by the State Board of Education that I feel compelled, for the benefit of the record, to express that disagreement.

From the law cited in the majority opinion and other authorities it is made clear to me that the power of appointment rests solely in the one member of the Carter County Board of Education who has been exonerated by the majority opinion. That member, in my opinion, still has the right to appoint the remaining members of the Board of Education insomuch as she has, by order of court, been enjoined from acting up to this time. I shall leave it to the Bench and Bar to ponder the merit of my position. I am not at all pleased with my conclusion. Nevertheless, I have not taken the oath of office as a member of the General Assembly and I am unwilling to exercise legislative authority in amending the applicable statute, however great the need may be.

PALMORE, Judge (dissenting in part).

I concur in the majority opinion as to W. L. Gearhart, J. H. McGlone, Mrs. Click and Estill Caudill but disagree as to Miss James, without reaching the question of whether KRS 160.190 authorizes the filling of vacancies by less than a quorum of the local board

At the time J. E. Gearhart resigned, not only were all five members of the board of education under formal charges directed to their removal, but the special commissioner had made a finding of their guilt and recommended the removal of all. Although the formal affixation of their guilt awaited the confirming action of the State Board of Education, at this stage the presumption was great. To say that one of them could then resign so that the other four might appoint a new member, who in turn could appoint four more members upon their removal, would give legitimacy to a patent subterfuge. Courts are not obliged, and do not have the right, to be blind to reality.

The facts of this case speak for themselves. My opinion is that sound public policy prohibited the appointment of a new member by the four remaining members of the board at a time when the charges against them were pending before the State Board, and that the appointment of Miss James was void. Therefore, I would sustain the ouster order as to her, simply on the ground that the State Board had the right to recognize that her purported appointment under these circumstances was a nullity.