RENDERED:  OCTOBER 6, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0964-MR

DANIEL CAMERON, ATTORNEY
GENERAL, ON BEHALF OF
THE COMMONWEALTH OF
KENTUCKY                                                              APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE CHARLES L. CUNNINGHAM, JUDGE
                            ACTION NO. 22-CI-002816


JEFFERSON COUNTY BOARD
OF EDUCATION AND DR. JASON E.
GLASS, IN HIS OFFICIAL CAPACITY
AS COMMISSIONER OF
EDUCATION                                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  In 2022, the Kentucky General Assembly passed an omnibus

education bill, Senate Bill (S.B.) 1, entitled "an Act relating to education and

declaring an emergency."[1]  Section 3(2) of S.B. 1, codified in Kentucky Revised Statutes (KRS) 160.370(2), significantly modifies the relationship between local boards of education and superintendents, by giving greater autonomy and power to the superintendents.  KRS 160.370(2) only applies, however, in "a county school district in a county with a consolidated local government[.]"  KRS 160.370(2).  The only school district which meets this description is that of Jefferson County.

The Jefferson County Board of Education (the Board) sought a declaratory judgment in Jefferson Circuit Court, contending that five specific provisions of KRS 160.370(2) violate the ban on special and local legislation found in Sections 59 and 60 of the Kentucky Constitution.  The circuit court ruled that the contested provisions violated not only Section 59 but also the equal protection clause found in Section 2 of the Kentucky Constitution.

The appellant, the Attorney General of Kentucky, argues that the Board lacked constitutional standing to challenge the legislation and failed to name a necessary party to the suit.  As to the merits, he argues that the challenged provisions survive constitutional scrutiny under Sections 59 and 60 because they do not apply to a particular individual, object, or locale and that the legislation creates a classification which passes rational basis review for purposes of equal protection.

---

[1] 2022 Ky. Acts ch. 196, S.B. 1.

Upon careful consideration, we hold that the Board had standing to bring this suit, that it did not fail to name a necessary party, and that the contested provisions of KRS 160.370(2) are local or special legislation prohibited under Sections 59 and 60 of the Kentucky Constitution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The five subsections of KRS 160.370(2) at issue in this appeal provide as follows:

> (2) For a county school district in a county with a consolidated local government adopted under KRS Chapter 67C:
>
> > (a) A local board of education shall:
> >
> > > 1. Delegate authority to the superintendent over the district's day-to-day operations and implementation of the board-approved strategic plan in a manner that promotes the efficient, timely operation of the district, including but not limited to the authority over contracts related to daily operations of the district, pupil transportation, personnel matters, and the organizational structure of administrative staff;
> > >
> > > 2. Except as expressly required by statute, including subparagraphs 3. and 5. of this paragraph, not meet more than once every four (4) weeks for the purpose of approving necessary administrative matters[.]

KRS 160.370(2)(a)1., 2.

(b) Notwithstanding any provision to the contrary in subsection (1) of this section, the superintendent shall:

> 2. Prepare all rules, regulations, bylaws, and statements of policy for approval and adoption by the board, with approval not to be withheld without a two-thirds (2/3) vote of the board to deny approval or adoption; [and]
>
> . . . .
>
> 5. Notwithstanding any law that assigns an administrative duty, responsibility, or authority to a board of education, or other law to the contrary, be responsible for any administrative duty not explicitly granted to the board under paragraph (a) of this subsection[.]

KRS 160.370(2)(b)2., 5.

> (c) If the county adopts the provisions of the Kentucky Model Procurement Code, the board shall authorize the superintendent to approve purchases, in accordance with small purchase procedures adopted by the board, for any contract for which a determination is made that the aggregate amount of the contract does not exceed two hundred fifty thousand dollars ($250,000). The board shall authorize the superintendent to approve a line-item transfer within its annual budget as she or he deems necessary, provided that the aggregate amount of any individual transfer does not exceed two hundred fifty thousand dollars ($250,000). The superintendent shall provide a quarterly report to the board on any purchases made under this subsection.

KRS 160.370(2)(c).

To summarize, the provisions that are being challenged require the school board to give the superintendent authority over the "day-to-day operations

-4-

and implementation of the board-approved strategic plan"; require the board to limit its meetings to once every four weeks; require a two-thirds vote of the board to disapprove a rule, regulation, by-law, or statement of policy of the superintendent; require the board to grant the superintendent responsibility for "any administrative duty not explicitly granted to the [school] board"; and require the board to authorize the superintendent to make purchases not exceeding $250,000 and transfers to the annual budget in the same amount, without board approval.

As previously stated, the Jefferson County school district is currently the only "county school district in a county with a consolidated local government adopted under KRS Chapter 67C[.]" KRS 160.370(2).

The Board's complaint named one defendant, Dr. Jason E. Glass, in his official capacity as the Commissioner of Education of Kentucky (the Commissioner). The complaint sought a declaratory judgment that the challenged provisions of S.B. 1 violate the prohibition against special or local legislation found in Sections 59 and 60 of the Kentucky Constitution and requested temporary and permanent injunctive relief. The Attorney General entered an appearance, pursuant to KRS 418.075(1) and KRS 15.020(3), to defend the constitutionality of the legislation.

The circuit court conducted a hearing at which the Commissioner expressed no opinion regarding the constitutionality of the provisions, or whether he would enforce them, stating it was not his role to determine if they were constitutional and that he had to assume they were constitutional until told otherwise. The Attorney General argued that because the Commissioner was not taking a position contrary to the Board it was unclear whether a case or controversy existed. Counsel for the Board indicated that Dr. Marty Pollio, the Superintendent of the Jefferson County School District, was not planning to defend the challenged provisions.

The Jefferson Circuit Court entered a declaratory judgment holding that the challenged provisions violate Section 59 of the Kentucky Constitution, which prohibits special and local legislation. Of its own accord, it held that the provisions also violate the equal protection clause of Section 2 of the Kentucky Constitution. Its order declared that the Board did not have to comply with the provisions, but it did not enter an injunction, explaining that it did "not envision, absent a differing opinion being issued by an appellate court, that anyone will be actively trying to enforce the contested provisions once this declaratory judgment has been disseminated." The circuit court retained the right to enter an injunction if any attempts were made to enforce the provisions after the date the statute became effective. Upon unopposed motion by the Board, the circuit court entered

-6-

a motion to amend the judgment to clarify the specific provisions of S.B. 1 to which the declaratory judgment applied. This appeal by the Attorney General followed. The President of the Kentucky Senate, Robert Stivers, submitted an *amicus curiae* brief defending the legislation.

## II. STANDARD OF REVIEW

"The standard of review on appeal from a declaratory judgment is whether the judgment was clearly erroneous." *Public Service Commission of Kentucky v. Metropolitan Housing Coalition*, 652 S.W.3d 648, 651 (Ky. App. 2022), *discretionary review denied* (Oct. 12, 2022) (citing *American Interinsurance Exchange v. Norton*, 631 S.W.2d 851, 852 (Ky. App. 1982)).

## III. ANALYSIS

**i. The Board had standing to challenge the statutory provisions**

The Attorney General argues that the Board lacked constitutional standing to bring this suit. Whether the Board has standing "is a jurisdictional question of law that is reviewed *de novo*." *Ward v. Westerfield*, 653 S.W.3d 48, 51 (Ky. 2022), *reh'g denied* (Sep. 22, 2022) (citation omitted).

The existence of standing is of paramount importance in any lawsuit. The Kentucky Supreme Court "has held, and reaffirmed, that 'the existence of a plaintiff's standing is a constitutional requirement to prosecute any action in the courts of this Commonwealth.'" *Id.* (quoting *Commonwealth Cabinet for Health*

*& Family Services, Department for Medicaid Services v. Sexton by & through*

*Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 188 (Ky. 2018)).

To determine whether a party has standing, Kentucky has adopted the federal *Lujan* test. *Sexton*, 566 S.W.3d at 196; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The test requires the plaintiff to prove three elements: (1) injury, (2) causation, and (3) redressability. *Id*. "To invoke the court's jurisdiction, the plaintiff must allege an injury caused by the defendant of a sort the court is able to redress." *Kenton County Board of Adjustment v. Meitzen*, 607 S.W.3d 586, 597 (Ky. 2020) (citations omitted). Kentucky's Declaratory Judgment Act allows the courts to determine a litigant's rights before harm occurs if the plaintiff shows the existence of an actual controversy. *Commonwealth v. Kentucky Retirement Systems*, 396 S.W.3d 833, 839 (Ky. 2013); KRS 418.040. Such a controversy occurs when a defendant's position would "impair, thwart, obstruct or defeat plaintiff in his rights." *Kentucky Retirement Systems*, 396 S.W.3d at 839 (quoting *Revis v. Daugherty*, 215 Ky. 823, 287 S.W. 28, 29 (1926)).

The Attorney General argues that the Board failed to prove the elements of causation and redressability, because even if the challenged provisions injure the Board by transferring some of its powers to the Superintendent, the

Board cannot show that the Commissioner caused that injury or that the Court can redress that injury by granting relief against the Commissioner.

When, as in this case, a plaintiff is bringing a pre-enforcement challenge to the constitutionality of a statute, the *Lujan* elements of causation and redressability are met when the plaintiff names as the defendant the government official charged with enforcing the law. So, for example, plaintiffs who brought suit against the Governor and the Commissioner of Agriculture for failure to enforce animal protection statutes failed to meet the *Lujan* element of causation because "the animal shelter statutes do not vest enforcement power with the Governor or the Commissioner of Agriculture." *Kasey v. Beshear*, 626 S.W.3d 204, 209 (Ky. App. 2021), *discretionary review denied* (Aug. 18, 2021). By contrast, plaintiffs who challenged the constitutionality of the Education Opportunity Account Act as impermissibly redirecting state revenues to public schools properly named as defendants the Secretary of the Kentucky Finance and Administration Cabinet and the Commissioner of the Kentucky Department of Revenue "based on their statutorily-prescribed roles in implementing the program." *Commonwealth ex rel. Cameron v. Johnson*, 658 S.W.3d 25, 30 (Ky. 2022).

Kentucky law in this respect mirrors the federal standard, which provides that "when a plaintiff brings a pre-enforcement challenge to the

constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007). For standing to exist, there must be "an actual enforcement connection – some enforcement power or act that can be enjoined – between the defendant official and the challenged statute." *Okpalobi v. Foster*, 244 F.3d 405, 419 (5th Cir. 2001). Similarly, to meet the redressability prong of the *Lujan* test in the context of a challenge to a statute, the named defendant must have the power to enforce the challenged statute. *Bronson*, 500 F.3d at 1111. The enforcement requirement is critically important because, without it, a court could issue "what would amount to an advisory opinion without the possibility of any judicial relief." *California v. Texas*, 539 U.S. ___, 141 S. Ct. 2104, 2116, 210 L. Ed. 2d 230 (2021) (internal quotation marks and citation omitted).

The Board argues that the Commissioner, the chief state school officer,[2] was the appropriate defendant for purposes of standing because the contested statutory provisions are enforceable only by the Commissioner, as provided in KRS 156.210, which states:

---

[2] The Commissioner is appointed by the Education Management Selection Commission "to carry out the duties of the chief state school officer." KRS 156.147(2).

(1) The chief state school officer shall have access to the papers, books and records of all teachers, trustees, superintendents, or other public school officials.

(2) He may administer oaths and may examine witnesses under oath in any part of the state in any matter pertaining to the public schools, and may cause the testimony to be reduced to writing. He may issue process to compel attendance of witnesses before him and compel witnesses to testify in any investigation he is authorized to make.

(3) When he or his assistants find any mismanagement, misconduct, violation of law, or wrongful or improper use of any district or state school fund, or neglect in the performance of duty on the part of any official, he shall report the same, and any other violation of the school laws discovered by him, to the Kentucky Board of Education, which shall, through the chief state school officer or one (1) of his assistants, call in the county attorney or the Commonwealth's attorney in the county or district where the violation occurs, and the attorney so called in shall assist in the indictment, prosecution, and conviction of the accused. If prosecution is not warrantable, the Kentucky Board of Education may rectify and regulate all such matters.

KRS 156.210.

The Attorney General argues that the challenged statutory provisions do not provide the Commissioner with sufficient enforcement powers to create standing. He points out that the challenged legislation does not transfer the Board's powers to the Commissioner, but to the Superintendent, and it does not empower the Commissioner to take any action to enforce the provisions. He contends that KRS 156.210(3) cannot make up for the Commissioner's "lack of

role" and that any fear he will choose to enforce the statutory provisions is "pure conjecture."

But the Commissioner's duty to enforce the statute is not conjectural; it is mandatory. The Commissioner is the executive and administrative officer of the Kentucky Board of Education in its administration of all educational matters and functions. KRS 156.148(3). The Commissioner must report any violations of the law to the Board, which is required, through the Commissioner or his assistants, to call in the county attorney or Commonwealth's attorney who in turn is required to assist in prosecuting the accused. KRS 156.210(3). If prosecution is not warranted, the Kentucky Board of Education has the discretion to rectify and regulate the matter. *Id*. Whether a defendant possesses enforcement authority sufficient for standing purposes turns on whether the defendant "has 'some connection' with the enforcement of the [challenged state law]." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015). The Commissioner's role under KRS 156.210(3) meets this standard.

The Attorney General contends that because the challenged legislation does not contain any specific internal provision empowering the Commissioner to take any action that could harm the Board, the Board is unable to establish that any injury it suffers is traceable to the Commissioner. He relies on *California v. Texas*, *supra*, a case in which the plaintiffs claimed the Patient Protection and Affordable

-12-

Care Act, which required them to purchase minimal essential health insurance coverage, was unconstitutional. Originally, the Act imposed a monetary penalty on individuals for failing to purchase such coverage, and provided that the penalty would be included with the taxpayer's federal tax return. Accordingly, the IRS required taxpayers to report on their federal income tax return whether they carried minimum essential coverage. Congress thereafter amended the Act to reduce that penalty to $0. The Supreme Court held that this amendment deprived the plaintiffs of standing because "the statutory provision, while it tells them to obtain that [minimum essential health insurance] coverage, has no means of enforcement. With the penalty zeroed out, the IRS can no longer seek a penalty from those who fail to comply." *California*, 141 S. Ct. at 2114. "Because of this, there is no possible Government action that is causally connected to the plaintiffs' injury – the costs of purchasing health insurance." *Id.* If the monetary penalty still existed, the IRS would have enforcement authority; without the penalty, the IRS had nothing to enforce and there was simply no means to compel the plaintiffs to purchase the insurance.

By contrast, KRS 156.210(3) imposes a clear and mandatory duty on the Commissioner to report violations of law and to seek enforcement of those laws. The Commissioner has the means to compel enforcement of statutes, either via criminal proceedings or referral to the state Board, which is responsible for

"the management and control of the common schools and all programs operated in these schools," KRS 156.070(1), and whose sweeping powers include the ability to remove school board members. *See Gearhart v. Kentucky State Bd. of Educ.*, 355 S.W.2d 667, 670 (Ky. 1962). It is true that when a prosecution is not deemed appropriate, the Kentucky Board of Education is given the discretion to rectify and regulate all such matters, but the Commissioner is the entity tasked with initiating and executing such a proceeding.

The Attorney General argues that Superintendent Pollio is nonetheless free to follow the challenged provisions without any interference from the Commissioner. But the Commissioner has the authority and the duty under KRS 156.210(3) to proceed against the Superintendent if he attempts to follow the provisions after they are declared unconstitutional.

We conclude that the Board had standing to bring this suit because the Commissioner possesses sufficient enforcement powers to meet the causation and redressability elements of the *Lujan* test.

**ii. The Superintendent was not a necessary party**

In a related argument, the Attorney General argues that this appeal should be dismissed because Superintendent Pollio was a necessary party under both Kentucky Rules of Civil Procedure (CR) 19.01 and the terms of the Declaratory Judgment Act.

CR 19.01 provides in pertinent part that

[a] person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary plaintiff.

The Declaratory Judgment Act states that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." KRS 418.075.

The Attorney General argues that, fundamentally, the Board's dispute is with the Superintendent, whatever Dr. Pollio's personal view of the matter and his personal assurances that he will not follow the statute, and that the Board cannot seek judicial relief with respect to the Superintendent's duties without naming him as a party.

As a preliminary matter, the Board contends that because the Attorney General did not intervene in the lawsuit and become a party, choosing instead to

enter an appearance to defend the constitutionality of the challenged provisions, he is not empowered to raise this issue at all. The Board relies on a series of cases which hold that CR 19.01 can be invoked only by parties. "[T]he provision of the Declaratory Judgment Act relating to parties, KRS 418.075, and . . . the civil rule which prescribes what parties shall be joined if feasible, CR 19.01[,] . . . can be invoked only by *parties*, not by a person who seeks to become a party." *Murphy v. Lexington-Fayette County Airport Bd.*, 472 S.W.2d 688, 689-90 (Ky. 1971). (Emphasis in original.) Holding otherwise would permit a nonparty to "simply lie back and await the result of the action in the circuit court and then, if not satisfied with the judgment, compel a retrial by the device of intervening after judgment." *Id.* at 690. *Uninsured Employers' Fund v. Bradley*, 244 S.W.3d 741, 746 (Ky. App. 2007).

Under KRS 418.075(1), the Attorney General is specifically entitled to be heard regarding the validity of a statute, without becoming a party. The Attorney General, although not a party, was present from the outset of this litigation and argued that the Superintendent was a necessary party; he did not "lie back" and await the outcome of the proceedings before raising an attack on the judgment. Under these circumstances, the Attorney General is entitled to appellate review of his argument that the Superintendent was a necessary party.

-16-

The express language of the challenged provisions requires action on the part of the Board to delegate authority to the Superintendent over day-to-day operations and requires the Board to authorize him to approve purchases. KRS 160.370(2)(a)1. and 160.370(2)(c). The Superintendent is not empowered to force the Board to limit the frequency of its meetings. KRS 160.370(2)(a)2. Only KRS 160.370(2)(b)2. and 5. expressly constrain the Board from withholding its approval of the Superintendent's rules and regulations without a two-thirds vote and make the Superintendent responsible for any administrative duty not explicitly granted to the Board. But the Superintendent is not given any means by which to enforce these latter provisions. The Superintendent's presence as a party was not required.

### iii. The contested provisions violate the prohibition against special and local legislation

Finally, we address whether the circuit court erred in holding that the challenged legislation violates the prohibition against special or local legislation found in Sections 59 and 60 of the Kentucky Constitution. The constitutionality of a statute is a question of law which we review *de novo*. *Teco/Perry County Coal v. Feltner*, 582 S.W.3d 42, 45 (Ky. 2019). "In considering an attack on the constitutionality of legislation, this Court has continually resolved any doubt in favor of constitutionality rather than unconstitutionality." *S.W. v. S.W.M.*, 647 S.W.3d 866, 873 (Ky. App. 2022), *discretionary review denied* (Aug. 16, 2022).

-17-

Sections 59 and 60 first appeared in Kentucky's fourth and final Constitution in 1891. They represented an attempt to prevent the legislature from wasting its time on mundane and trivial local matters and neglecting general legislation. *Calloway County Sheriff's Department v. Woodall*, 607 S.W.3d 557, 571 (Ky. 2020).

Section 59 expressly forbids local or special legislation relating to the management of public schools. It states in relevant part that "[t]he General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: . . . [t]o provide for the management of common schools." KY. CONST. § 59(25).

Section 60 provides that

> [t]he General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county; but laws repealing local or special acts may be enacted. No law shall be enacted granting powers or privileges in any case where the granting of such powers or privileges shall have been provided for by a general law, nor where the courts have jurisdiction to grant the same or to give the relief asked for. No law, except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than

the General Assembly, unless otherwise expressly provided in this Constitution.

KY. CONST. § 60.

The original test for a violation of Section 59 was simply that "special legislation applies to particular places or persons as distinguished from classes of places or persons[.]" *Woodall*, 607 S.W.3d at 567 (quoting *Greene v. Caldwell*, 170 Ky. 571, 587, 186 S.W. 648, 654 (1916)). With the passage of time, however, special, or local laws became confused with class legislation and for years, Kentucky courts mistakenly applied what was essentially an equal protection analysis to the special legislation prohibition in Section 59. They followed the test set out in *Schoo v. Rose*, 270 S.W.2d 940 (Ky. 1954), which states: "[I]n order for a law to be general in its constitutional sense it must meet the following requirements: (1) [i]t must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification." *Id.* at 941.

The *Woodall* Court held that the *Schoo* test, whose origins can be traced to the 1792 Constitution, does not "comport with a proper interpretation" of Sections 59 and 60 as they were understood at the time of the passage of the Third Constitution in 1891. *Woodall*, 607 S.W.3d at 566. *Woodall* set forth the following test which represents a return to the original test: a statute is special or local legislation prohibited by Sections 59 and 60 if "the statute applies to a

particular individual, object or locale." Challenges based on classification, on the other hand, succeed or fail on the basis of equal protection analysis under Sections 1, 2, and 3 of the Kentucky Constitution. *Woodall*, 607 S.W.3d at 573.

The circuit court held that the challenged legislation in this case violated Section 59 because, although it did not mention Jefferson County expressly by name, the provisions plainly singled out counties with a type of governance that only exists in Jefferson County.

The Attorney General argues that the challenged provisions instead represent a classification which could apply to any school district in a county with a consolidated local government that exists now, or in the future, and consequently the statute is one of general application across the entire Commonwealth. The Attorney General points out that nothing is preventing a city in a county with a population of more than 250,000 residents from choosing to become a city of the first class and thereafter opting for consolidation with its county under KRS 67C.101(1). In other words, the statute applies to a class rather than a specific individual, object, or locale, and therefore does not violate Section 59.

In the same vein, the *amicus* brief of the President of the Kentucky Senate contends that this case falls squarely in a line of cases holding that statutes applicable only in counties of a certain population are not special, local legislation under Section 59. For example, in *Winston v. Stone*, our highest court held that a

taxation statute applying only to counties with a population greater than 75,000 did

not violate Section 59. *Winston v. Stone*, 102 Ky. 423, 43 S.W. 397 (1897),

*overruled on other grounds by Vaughn v. Knopf*, 895 S.W.2d 566 (Ky. 1995). The

Court reasoned that the statute

> operates upon a multitude of property of like character
> owned by persons all over the state, and, in our judgment,
> it is neither local nor special, but general in purpose and
> detail, and most effective for securing to the state the
> revenue it seeks to collect. . . . It may be a fact that
> Jefferson [C]ounty is the only county in the state having
> a population in excess of 75,000, but the statute in
> question would apply to all counties of that class within
> the state[.]

*Id*. at 398.

Similarly, in *Sims v. Board of Education of Jefferson County, Ky*., 290

S.W.2d 491 (Ky. 1956), it was held that a statute which applied only to boards of

education in a county containing a city of the first class did not violate Section 59,

because it would apply in any county that in the future contained a city of the first

class. "While it is not probable that another city will qualify as a first-class city in

Kentucky at any time in the immediate future, nevertheless, it is always possible

and the statute would then be applicable to more than one county." *Sims*, 290

S.W.2d at 495. The *Sims* Court ultimately applied the rational basis test that was

rejected by *Woodall* to approve the legislation, stating "[w]e have long . . . held

that a legislative enactment is not necessarily local nor repugnant to Section 59 of

our Kentucky Constitution because such enactment applies to only one class or group of subjects, provided that the classification thus made is not unreasonable nor arbitrary." *Id*. at 495 (citation omitted).

In response, the Board argues that the challenged legislation does indeed apply to a particular individual, object, or locale, not to a class, and that an express reference to Jefferson County is not required for the legislation to be special or local. The Board relies on a more recent opinion, *University of Cumberlands v. Pennybacker*, 308 S.W.3d 668 (Ky. 2010), which addressed the constitutionality of a bill providing for the construction of a pharmacy school building on the campus of the University of the Cumberlands, a Baptist college located in Whitley County. The bill also provided for a Pharmacy Scholarship Program to benefit pharmacy students "at a private four (4) year institution of higher education with a main campus located in an Appalachian Regional Commission county." *Pennybacker*, 308 S.W.3d at 671. "No party to this litigation has questioned that the sole institution which would fit that description is [the University of the Cumberlands], providing the Pharmacy School is built." *Id*. at 683. The Court held that the Pharmacy Scholarship Program was special legislation which violates Section 59, based on "the inescapable conclusion . . . that the Pharmacy Scholarship Program was intended only for students attending the anticipated UC Pharmacy School." *Id*. at 683-84.

Of key importance is the *Woodall* Court's statement that even though the *Pennybacker* Court applied the superseded *Schoo* test in determining that the legislation at issue was unconstitutional, it "reached [the] correct result since the statute applied to [a] particular object." *Woodall*, 607 S.W.3d at 573 n.19. Under *Pennybacker* and *Woodall*, an express reference to a particular locale is not an essential prerequisite to finding a violation of Section 59; a description that can apply to only one individual, object, or locale may be sufficient. The *Woodall* Court directly addressed concerns that by abandoning the *Schoo* test it was enabling legislators "to draft around the Section 59 prohibition by avoiding express reference to a specific person, entity or locale but articulating criteria for a statute's application that as a practical matter only a specific person, entity or locale can satisfy, essentially reverting to the ways of the 1870s and 1880s." *Woodall*, 607 S.W.3d at 573. According to *Woodall*,

> [t]he answer to this objection is that Kentucky's courts, in that pre-1891 Constitution period, had only just begun to apply the "exclusive, separate" privilege prohibition of the Bill of Rights to evaluate class or partial legislation, and to equate that section with equal protection. Over the last 130 years, courts have had experience with the analysis and have shown little hesitancy in engaging a more rigorous analysis with respect to classification legislation.

*Id.*

*Woodall* endorses the development of a more rigorous analysis under Section 59, to address legislation drafted to avoid the Section 59 prohibition but nonetheless applying to only one specific individual, object, or locale. Thus, the fact that the challenged legislation does not expressly name the Jefferson County school district is not automatically dispositive of the constitutional question.

The interpretation and construction of a statute are concerned primarily with legislative intent. *Miller v. Bunch*, 657 S.W.3d 890, 894-95 (Ky. 2022); *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). "[O]ur first guiding principle in statutory construction is to ascertain and effectuate legislative intent." *Martin v. Warrior Coal LLC*, 617 S.W.3d 391, 394 (Ky. 2021).

The unmistakable intent of the legislature in this case was to ameliorate problems specific to Jefferson County. The Senate President's *amicus* brief states that the purpose behind the legislation was to address concerns that the Jefferson County Public School System (JCPS) was "failing too many of its students, especially students of color and those living below the poverty level." The brief describes concerns expressed in the media and by the public that these problems were attributable in part to micromanagement of JCPS by its Board. The brief outlines a subsequent attempt by the Kentucky Board of Education to give greater power to the Superintendent of JCPS, which culminated in a settlement

agreement from which JCPS was ultimately released by the Commissioner in 2020. The gap in student achievement persisted, however. The brief states that "[a]gainst this backdrop, it is hardly surprising that the 2022 General Assembly enacted the significant management reforms in S.B. 1 which, like the proposed state takeover, allow the superintendent to function as a chief executive officer, with JCBE [the Jefferson County Board] functioning more like a board of directors."

By the Senate President's own admission, the challenged provisions were intended to address the unique problems of the Jefferson County school district. This conclusion is supported by State Representative Ed Massey's statements in the debate over the final passage of S.B. 1:

> There are three large components that are rolled into one committee substitute that we discussed actually in committee today. The first one is a request with regards to Jefferson County which had done some things differently – had gotten some approval to do some things differently. They had the largest board in the state of Kentucky. There was at times a power struggle that existed between the board and the superintendent and how the day-to-day operations would be able to run. So, this language was brought to us and asked to be added into this as a house committee sub to allow them to continue to do what we believe is good work in Jefferson County in trying to deal with that particular issue.

*Kentucky General Assembly Regular Session/Debate/House Chambers*, *Part 2 at 5:08 p.m.*, KET (Mar. 22, 2022) https://ket.org/legislature/archives/2022/regular/house-chambers-part-2-201453.

In view of this clearly-stated legislative intent and the *Woodall* Court's approval of the decision in *Pennybacker*, we conclude that the challenged provisions were intended to apply only to a specific locale, not a class, and consequently are local or special legislation which is prohibited under Sections 59 and 60 of the Kentucky Constitution. The circuit court's holding that the provisions also violate the state's equal protection clause is consequently moot and will not be addressed here.

## CONCLUSION

For the foregoing reasons, the circuit court's order holding that the challenged provisions of S.B. 1, now codified at KRS 160.370(2)(a)1. and 2.; KRS 160.370(2)(b)2. and 5.; and KRS 160.370(2)(c) violate the prohibition against special and local legislation is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Victor B. Maddox
Deputy Attorney General

Matthew F. Kuhn
Solicitor General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Victor B. Maddox
Deputy Attorney General

Matthew F. Kuhn
Solicitor General
Frankfort, Kentucky

*AMICUS* BRIEF FILED FOR
SENATOR ROBERT STIVERS,
IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE SENATE:

David Fleenor
Frankfort, Kentucky

Sheryl G. Snyder
Louisville, Kentucky

BRIEF FOR APPELLEE
JEFFERSON COUNTY BOARD OF
EDUCATION:

David Tachau
Katherine Lacy Crosby
Amy D. Cubbage
Louisville, Kentucky

BRIEF FOR APPELLEE JASON E.
GLASS, COMMISSIONER OF
EDUCATION:

Ashley Lant
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE JEFFERSON COUNTY
BOARD OF EDUCATION:

David Tachau
Katherine Lacy Crosby
Amy D. Cubbage
Louisville, Kentucky